**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

MARCELO FABRA MARTINO and                   Case No.:
ANNA ROZOV,

     Plaintiffs,

     vs.

BANK OF AMERICA, N.A.,
EARLY WARNING SERVICES, LLC &
CHEX SYSTEMS, INC.,

     Defendants,

_____/

## COMPLAINT FOR DAMAGES
### JURY DEMAND

1.     Plaintiffs, MARCELO FABRA MARTINO ("Martino") and ANNA ROZOV ("Rozov") (collectively "Plaintiffs") by and through the undersigned counsel hereby bring this action against Defendant BANK OF AMERICA, N.A. ("Bank of America") for violations of the Equal Credit Opportunity Act, 15 U.S.C §1691 *et. Seq.* ("ECOA) and the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. Seq.* ("FCRA").

2.     Additionally, Plaintiffs bring this action against Defendants EARLY WARNING SERVICES, LLC, ("Early Warning") and CHEX SYSTEMS, INC. ("Chex Systems")., for violations of the FCRA.

### JURISDICTION AND VENUE

3.     This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

4.     Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Broward County, Florida.

1

**PARTIES**

5.      Plaintiff Rozov is an "applicant" as defined by15 U.S.C. §1691a(b) because she previously applied to Bank of America for extensions of credit and requested such credit to benefit herself.

6.      Plaintiffs are natural persons who, at all times relevant to this action are and were residents of Broward County, Florida and are each a "consumer" as defined by 15 U.S.C. § 1681a©.

7.      Defendant Bank of America is a Delaware Corporation with its principal place of business in the State of North Carolina. Bank of America is authorized to do business in and regularly conducts business in the State of Florida.

8.      Bank of America is a national bank that offers deposit accounts and credit cards to consumers with its principal place of business at 100 North Tryon Street, Charlotte, NC 28255. Bank of America maintains a registered agent in this state listed as CT Corporation System at 1200 South Pine Island Road, Plantation, FL 33324.

9.       Bank of America uses instrumentalities of interstate commerce for the purpose of furnishing information on specific trade accounts to Consumer Reporting Agencies.

10.     These instrumentalities of interstate commerce are largely electronic or telephonic communications which have effects on consumers account balances and their credit files within the State of Florida.

11.     Bank of America is a "creditor" as defined by the ECOA because it regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit.

12.     Bank of America is a "card issuer" as defined by 15 U.S.C §1602(o).

13.     Defendant, Early Warning is a Delaware limited liability company having a principal place of business at 16552 N. 90th St., Scottsdale, AZ 85260.

14.      Early Warning is authorized to do business in and regularly conducts business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

15.     Defendant, Chex Systems is a Minnesota corporation having its principal place of business at 7805 Hudson Road, Suite 100, Woodbury, Minnesota, 55125, and with offices in Tampa, Florida.

16.     Chex Systems is authorized to do business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

17.     Early Warning and Chex Systems shall be collectively referred to as the "Credit Reporting Agencies" or the "CRAs.

## STATUTORY FRAMEWORK

### The ECOA

18.     The ECOA initially required the Federal Reserve Board to promulgate regulations to enforce the Act. *See* 15 U.S.C. § 1691b (1974).

19.     The Federal Reserve Board promulgated Regulation B, which defines an applicant as "any person who requests or who has received an extension of credit from a creditor," which includes "any person who is or may become contractually liable regarding an extension of credit." *See* 12 C.F.R. § 202.2(e).

3

20.     Additionally, "the term "applicant" is one who requests credit to benefit himself." *See Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1191 (11th Cir. 2019).

21.     The ECOA defines an "adverse action" as a denial **or revocation of credit, a change in the terms of an existing credit arrangement**, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit. *See* 15 U.S.C. § 1691(d)(6)(emphasis added).

22.     The ECOA and its regulations require a creditor to give the applicant a statement of specific reasons for the action taken. *See* 15 U.S.C. §1691(d).

23.     The Official Staff Commentary to Reg. B requires that the reasons disclosed by the creditor for taking the adverse action must be accurate.  *See* 12 C.F.R. § 202.9(b)(2)-2.

24.     The ECOA requires creditors to maintain records of credit transactions for 25 months following the date of the adverse action.  *See* 12 C.F.R. § 202.12(b)(1).

25.     "Any creditor who fails to comply with any requirement imposed under this subchapter shall be liable to the aggrieved applicant for any actual damages sustained by such applicant acting either in an individual capacity or as a member of a class." *See* 15 U.S.C. § 1691e(a).

26.     "Any creditor, other than a government or governmental subdivision or agency, who fails to comply with any requirement imposed under this subchapter shall be liable to the aggrieved applicant for punitive damages in an amount not greater than $10,000, in addition to any actual damages provided in subsection (a) . . ." *See* 15 U.S.C. § 1691e(b).

**The FCRA**

27.     The Fair Credit Reporting Act, 15 U.S.C. §1681 *et. seq.,* was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

28.     The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *See Cortez v. Early Warning Services, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

29.     Congress found that "[i]nnaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." *See* 15 U.S.C. §1681(a)(1).

30.     "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy. The Fair Credit Reporting Act seeks to secure these rights." Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969).

31.     A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. 15 U.S.C. §1681s-2.

32.     "Furnishers of information" under the FCRA, pursuant to 15 U.S.C. §1681s-2(b) to conduct a reasonable investigation into each of the disputes that it receives from the credit reporting agencies. *See Hinkle v. Midland Credit Mgmt., Inc.,* 827 F.3d 1295, 1302 (11th Cir. 2016).

33.     Congress also found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." *See* 15 U.S.C. § 1681(a)(3), (4).

34.     The FCRA requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of consumer reports. *See* 15 U.S.C. § 1681e(b). If a consumer disputes information contained in their credit report, the FCRA requires a credit reporting agency to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller." *See* 15 U.S.C. § 1681i(a)(1)(A).

35.     In performing the reinvestigation, the FCRA requires a credit reporting agency to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." *See* 15 U.S.C. § 1681i(a)(4).

36.     If the disputed information is inaccurate or incomplete or cannot be verified, the consumer reporting agency "shall…(i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and

(ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." *See* 15 U.S.C. § 1681(a)(5)(A)(i),(ii).

37.     The FCRA provides a private right of action against any person that violates the provisions of the FCRA. *See* 15 U.S.C. §§ 1681o, 1691n.

38.     If the violation is negligent, the FCRA allows the consumer to recover actual damages (§ 1681o(a)); however, if the violation is willful, the consumer may recover any actual damages or statutory damages from not less than $100.00 and not more than $1,000. § 1681n(a).

39.     If the Violation is willful under § 1681n(a) the violator is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; such amount of punitive damages as the court may allow; and in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

## **FACTUAL ALLEGATIONS**

40.     Martino and Rozov are a married couple who held a joint checking account with Bank of America, ending in 7367 which was closed for inaccurate reasons further described below ("Joint Checking account.")

41.     Additionally, Rozov had a credit card account issued by Bank of America, ending in 0459 with Martino listed as an authorized user, which was closed for inaccurate reasons further described below ("Authorized User Account").

42.     Rozov also had an individual credit card account with Bank of America, ending in 4155, which was closed for inaccurate reasons further described below ("Rozov Credit Account.")

43.     Rozov also held a business credit card account with Bank of America, ending in 3-7463, which was closed for inaccurate reasons further described below. ("Business Credit Account.")

44.     Martino is the victim of an employment scam where he was issued a fraudulent check that he innocently deposited into the Joint Checking Account; when he discovered the fraud, he alerted Bank of America immediately.

45.     Bank of America responded by closing the Joint Checking Account, then sent false information to Early Warning and Chex Systems which claimed Martino and Rozov were responsible for the fraudulent check that was deposited.

46.     On January 24, 2023, Bank of America also closed the Joint Checking Account based on the false information it chose to report to the CRAs: that Martino and Rozov were responsible for the fraudulent check deposited.

47.     On January 31, 2023, Bank of America sent a letter to Rozov advising her that the Authorized User Account was being closed based on "Irregular transactions . . ." which were generally described by the image below.

January 31, 2023

Credit card ending in: 0459

Anna Rozov:

Unfortunately, we've made the decision to close your credit card. Here's what you need to know.

We carefully reviewed your account history, credit report(s) provided by the credit reporting agency(ies) listed below and current economic and loss trends. We also considered your relationship with us and, unfortunately, we had to close your account because of the following reason(s):

Irregular transactions or other activity on one or more of your accounts, with us and/or our affiliates, or on your credit profile

48. On January 31, 2023, Bank of America sent a letter to Rozov advising her that the Rozov Credit Account was being closed based on "Irregular transactions . . ." which were generally described by the image below.

```
January 31, 2023

Credit card ending in: 4155

Anna Rozov:

Unfortunately, we've made the decision to close your credit card.
Here's what you need to know.

We carefully reviewed your account history, credit report(s) provided
by the credit reporting agency(ies) listed below and current economic
and loss trends. We also considered your relationship with us and,
unfortunately, we had to close your account because of the following
reason(s):

Irregular transactions or other activity on one or more of your
accounts, with us and/or our affiliates, or on your credit profile
```

49. On February 2, 2023, Bank of America sent a letter to Rozov advising her that the Business Credit Account was being closed based on "Unsatisfactory performance on your personal Card Services account" which is represented in the image below.



ANNA ROZOV

**Business credit account
ending in:**
3-7463

**Date:**
February 2, 2023

Anna Rozov:

After careful review, we closed this account as of the date on this letter,
for the following reason(s):

Unsatisfactory performance on your personal Card Services account

We considered the information you provided, your relationship with us and/or current economic trends.

9

50.     After the checking and credit accounts were closed, Plaintiffs began disputing the information Bank of America supplied to the CRAs.

51.     On June 5, 2023, Martino wrote a dispute letter to the CRAs disputing information being reported to them by Bank of America: that Plaintiffs had committed fraud while using the Joint Checking Account.

52.     In the dispute letters to the CRAs Martino advised that he was the victim of an employment scam and even though he did everything in his power to communicate that to Bank of America, the Joint Checking Account was closed for fraud, and that information was reported to the CRAs.

53.     Martino attached relevant sections from his Early Warning and Chex Systems consumer reports that identified the Joint Checking Account and included the full account number.

54.     Martino stated the account was being inaccurately reported as closed for "Checking Account Fraud" in his Early Warning credit file and "suspected Fraud Activity" in his Chex Systems credit file; Bank of America was courtesy copied on both dispute letters. *See* Composite Exhibit "A."

55.     Martino advised that the reporting was not only inaccurate, but also misrepresented him as a consumer, and was unfair to him because the inaccurate information was affecting his ability to open another checking account.

56.     In the dispute letter, Martino detailed that in December of 2022, he applied for positions related to his expertise as a Supply Chain Specialist with a company called KLX Aero.

57.     Martino further detailed that he began corresponding with a "Per Ericson", who officially offered him employment on December 15, 2022.

58.     As part of KLX Aero's intake process, they sent Martino a check, overnight, for $21,900.00 to buy supplies and begin training.

59.     When Martino went to Bank of America, to deposit the check into the Joint Checking Account, the teller ran the check through their security protocols and deposited it into the account; Martino was told it would take a few business days for the funds to be available.

60.     Martino further advised in his dispute letter that the very next day, Ericson called and asked him to wire $9,000 in funds to a certified equipment vendor for KLX Aero, to which he agreed to.

61.     Martino called Bank of America to provide them with the wire information at which time the representative alerted him of the wire limit and asked if Martino was sure he wanted to override the limit. This made Martino apprehensive, so he decided to wait until the funds cleared before wiring any funds.

62.     Martino then relayed this to the fake employer: that he would be waiting to wire the funds until the check cleared.

63.     The fake employer pushed Martino to rush the wire and offered to provide more documentation about the legitimacy of KLX Aero.

64.     Martino then became even more suspicious and began to worry he was being scammed.

65.     The very next day that the bank opened, Martino went into his local branch and reported his suspicions to the teller and told them that he would like to cancel the deposit and have them open an investigation. Martino was trying to be proactive and prevent any type of fraud.

66.     At this point, the original deposit check had not cleared.

67.     The teller advised Martino that Bank of America would open an investigation, which would freeze the Joint Checking Account for seven days. Martino was happy to comply because he wanted to do the right thing and prevent any kind of fraud for both him and Bank of America.

68.     After the 7-day period, Martino called Bank of America to check on the status of their investigation and was notified the Joint Checking Account would be frozen for 30 days instead of seven as he was originally informed.

69.     Martino asked the representative on the phone if he would be able to transfer his funds to another checking account, because the frozen account was his only checking account and he had no other way of paying his rent or other bills.

70.     Martino was told that he would not be able to access any of his funds until the 30-day period was over.

71.     During the 30-day period that Martino's account was being investigated, he had confirmed that he was a victim of an employment scam.

72.     On January 17, 2023, Martino promptly reported the fraud to the FBI Internet Crimes Division, which was provided in his disputes. *See* Composite Exhibit "A."

73.     Martino also returned to his local branch and informed them that he was the victim of a scam and tried to give them the same FBI Internet Crimes Report ("FBI Report.")

74.     The Bank of America representative refused to take the FBI Report. As a result, Martino asked the representative to contact Bank of America's fraud department to ask if it could accept the report. The representative called the fraud department and Martino was able to speak to a fraud department representative, but the representative refused to accept his report.

75.     At the end of the 30-day period, Martino and Rozov attempted to access the Joint Checking Account, but they were locked out.

76.     Martino returned to the local branch to investigate the issue and was told Bank of America had closed the Joint Checking Account and a check with the remaining balance would be sent to him and his wife.

77.     Martino was shocked and upset because he genuinely believed he acted appropriately by reporting the fraud to Bank of America.

78.     Martino requested copies of his Early Warning and Chex Systems consumer reports from Bank of America but was refused.

79.     Bank of America had closed the Joint Checking Account and also took adverse actions on the Authorized User Account and Rozov Credit Account; the adverse actions taken on all accounts were based on the fraud that Martino promptly alerted Bank of America to.

80.     Because of Bank of America's reporting to the CRAs, Martino's Deposit Account Score has dropped significantly to 568. *See* Composite Exhibit "A."

81.     The Deposit Account Score was reported to other banking institutions when Martino applied for checking accounts and has been a substantial factor in him being denied an account.

82.     Because Martino has been denied checking accounts, he has experienced extreme difficulty paying his bills and making simple electronic payments or purchases. As a result, these difficulties have caused Martino emotional distress as he has tried to stay consistent with his financial obligations.

83.     Martino detailed all of the above facts to the CRAs, provided his cell phone and asked for a thorough investigation and that the misreporting be corrected.

84.     On July 7, 2023, Bank of America sent correspondence to Martino confirming the reporting despite his efforts to correct the same, which is represented by the image below.



**Bank of America**

PO Box 44145
Jacksonville, FL 32231-4145

MARCELO FABRA MARTINO

**Date:** July 7, 2023

**Account ending in:** 7367
**Research Request No.:**
230627DPST00122

Our review determined that we accurately reported your account to the consumer reporting agencies.

**What you need to know**

We received your inquiry to adjust information previously reported to the consumer reporting agency for the above-referenced account. We've completed our investigation and have confirmed:

- This account is being reported to your file.

**If you'd like a copy of your consumer credit report, below is the consumer bureau contact information:**

| CHEXSystems (CHEX): | Early Warning Systems (EWS): |
|---|---|
| Consumer Relations | Attn: Consumer Services |
| 7805 Hudson Road, Suite 100 | 5801 North Pima Road |
| Woodbury, MN 55125 | Scottsdale, Arizona 85250 |
| 800.428.9623 | 800.325.7775 |
| www.consumerdebit.com | www.earlywarning.com |

85. On July 27, 2023, Martino received a letter from Early Warning confirming the reporting despite his efforts to cure the same, which is represented by the image below.

PHONE 800.745.1560
www.earlywarning.com

July 27, 2023

Marcelo Fabra Martino

| **Dispute Case ID:** | 672421 |
|---|---|
| **Bank Name:** | Bank of America |
| **Reference #:** | 00759980917573671 0015263181 |

Dear Marcelo Fabra Martino:

We are in receipt of your dispute of the information contained in your file and the reinvestigation of the accuracy of the reported information has been completed. The reinvestigation confirms that the information contained in your file is accurate and complete as of the date it was furnished to our database.

If the reinvestigation does not resolve your dispute regarding the accuracy or completeness of the report, you may submit a brief written rebuttal statement setting forth the nature of your dispute. See your File Disclosure for additional information.

Upon your written request(s) Early Warning will:
1. Furnish a copy of your updated report, including the rebuttal statement, to parties who have received a copy of your file during the preceding two years for employment purposes or during the preceding six months for all other purposes.
2. Provide you with a copy of our reinvestigation procedures, including the contact information for any furnisher of information.

Please call 800-745-1560 if you wish to discuss this matter, or to schedule an appointment to meet with a Consumer Services representative at our Scottsdale, AZ office.

Sincerely,
Consumer Services
Early Warning

86.     Chex Systems failed to provide any response to the dispute letter send by Martino.

87.     Because Rozov was associated with Martino on one or more of the accounts described above, she began disputing the inaccurate information just as her husband had.

88.     On July 10, 2023, Rozov wrote a dispute letter to the CRAs disputing information related to the fraud on the Joint Checking Account. *See* Composite Exhibit "B."

89.     In the dispute letters to the CRAs Rozov advised that her husband was the victim of an employment scam and even though they did everything in their power to correct and communicate that to Bank of America the Joint Checking Account was closed for fraud, and that information was reported to the CRAs. *Id*.

90.     Rozov attached relevant sections from her Early Warning and Chex Systems consumer reports that identified the Joint Checking Account and included the full account number. Id.

91.     Rozov advised that the account was being inaccurately reported as closed for "Checking Account Fraud" by Early Warning and "suspected Fraud Activity" by Chex Systems. *Id*. Bank of America was courtesy copied on both dispute letters.

92.     Rozov stated the reporting was not only inaccurate, but also misrepresented her as a consumer, and was unfair to her as it was affecting her ability to open an account with other banks. *Id*.

93.     Rozov's dispute letters to the CRAs reiterated her husband's efforts to address the fraud and the results that followed. *Id*.

94.     Identical to Martino, Rozov attempted to access the Joint Checking Account after the 30-day period ended but realized she could not access any of her funds.

95.     Bank of America had closed the Joint Checking Account and also took adverse actions on the Authorized User Account, Rozov Credit Account, and the Business Credi Account; the adverse actions taken on all accounts were based on the fraud that Martino alerted Bank of America to.

96.     Because the frozen account was Rozov's only checking account she had no other way of paying her rent or other bills.

97.     Because of Bank of America's reporting to the CRAs, Rozov's Deposit Account Score has dropped significantly to 570. *See* Composite Exhibit "B."

98.     The Deposit Account Score was reported to other banking institutions when Rozov applied for checking accounts and has been a substantial factor in her being denied an account.

99.     Specifically, Rozov was denied a checking account by Wells Fargo based on information maintained by Early Warning, which was originally supplied by Bank of America, which is represented by the image below.

February 8, 2023

ANNA ROZOV

Subject: Decision about your recent application for a deposit account

Thank you for your recent application for a Wells Fargo deposit account. We are unable to open the account for which you applied at this time. If you were able to successfully open the account for which you applied, we are providing this letter for your awareness of the use of the consumer report.

**About our decision and your consumer report**

Our decision about your application was based in whole or in part on information in a consumer report (often called a credit report) from the consumer reporting agency below. This agency was not involved in our decision and cannot provide specific reasons why we are not able to offer you an account at this time.

However, we want to make sure you're aware of your right under the Fair Credit Reporting Act to know the information in your credit file, and to receive a free copy of your consumer report from the agency if you request it within 60 days after you receive this notice. If you find that any information in the report is inaccurate or incomplete, you have the right to dispute it with the reporting agency. To obtain a free copy of your report, please contact:

Early Warning Services
5801 North Pima Road
Scottsdale, AZ 85250
1-800-204-4616
https://www.earlywarning.com/consumer

The federal agency that administers compliance with this law concerning this creditor is:

Bureau of Consumer Financial Protection
1700 G Street NW
Washington DC 20006

16

100. Because Rozov has been denied checking accounts, she has experienced extreme difficulty with paying her bills and making simple electronic payments or purchases. As a result, these difficulties have caused Rozov emotional distress as she has tried to stay consistent with her financial obligations.

101. Rozov detailed all of the above facts to the CRAs, provided his cell phone and asked for a thorough investigation and that the misreporting be corrected.

102. Bank of America and the CRAs have all failed to respond to the dispute letters sent by Rozov.

## COUNT I – VIOLATIONS OF 15 U.S.C. §1691d
## AGAINST BANK OF AMERICA FOR
## AUTHORIZED USER ACCOUNT CLOSURE

103. Plaintiff Rozov incorporates by reference the allegations in paragraphs 1, 3 – 12, 18 – 26, and 40 - 102 as if fully stated herein.

104. Bank of America is a "creditor" as defined by the ECOA because it regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit.

105. Bank of America took "adverse action" on Rozov's Authorized User Account when it closed the account.

106. Bank of America violated the ECOA by failing to provide Rozov with the reasons, or accurate reasons, for taking adverse action on the Authorized User Account.

107. Because of Bank of America's ECOA violations Plaintiff seeks statutory penalties and punitive damages of $10,000, together with reasonable attorney fees and costs.

17

108.    As a result of Bank of America's violations of the ECOA, Rozov has been damaged.

109.    Rozov's damages include emotional distress associated with the adverse action based on inaccurate reasons, loss of credit and the opportunity to benefit from credit, and time spent dealing with Bank of America's ECOA violations.

WHEREFORE, Rozov, prays this Honorable Court to enter the following relief against Bank of America in the form of:

    a.  actual damages,

    b.  $10,000 in statutory penalties and punitive damages pursuant to 15 U.S.C. § 1691e(b);

    c.  Reasonable attorney fees and costs pursuant to 15 U.S.C. § 1691e(d);

    d.  and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT II – VIOLATIONS OF 15 U.S.C. §1691d
### AGAINST BANK OF AMERICA
### FOR ROZOV CREDIT ACCOUNT CLOSURE

110.    Plaintiff Rozov incorporates by reference the allegations in paragraphs 1, 3 – 12, 18 – 26, and 40 - 102 as if fully stated herein.

111.    Bank of America is a "creditor" as defined by the ECOA because it regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit.

112.    Bank of America took "adverse action" on the Rozov Credit Account when it closed the account.

113.    Bank of America violated the ECOA by failing to provide Rozov with the reasons, or accurate reasons, for taking adverse action on the Rozov Credit Account.

114.    Because of Bank of America's ECOA violations Plaintiff seeks statutory penalties and punitive damages of $10,000, together with reasonable attorney fees and costs.

115.    As a result of Bank of America's violations of the ECOA, Rozov has been damaged.

116.    Rozov's damages include emotional distress associated with the adverse action based on inaccurate reasons, loss of credit and the opportunity to benefit from credit, and time spent dealing with Bank of America's ECOA violations.

WHEREFORE, Rozov, prays this Honorable Court to enter the following relief against Bank of America in the form of

a.   actual damages,

b.   $10,000 in statutory penalties and punitive damages pursuant to 15 U.S.C. § 1691e(b);

c.   Reasonable attorney fees and costs pursuant to 15 U.S.C. § 1691e(d);

d.   and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT III – VIOLATIONS OF 15 U.S.C. §1691d
### AGAINST BANK OF AMERICA
### FOR BUSINESS CREDIT ACCOUNT CLOSURE

117.    Plaintiff Rozov incorporates by reference their allegations in paragraphs 1, 3 – 12, 18 – 26, and 40 – 102 as if fully stated herein.

118.    Bank of America is a "creditor" as defined by the ECOA because it regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal,

or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit.

119.   Bank of America took "adverse action" on the Business Credit Account when it closed the account.

120.   Bank of America violated the ECOA by failing to provide Rozov with the reasons, or accurate reasons, for taking adverse action on the Business Credit Account.

121.   Because of Bank of America's ECOA violations Plaintiff seeks statutory penalties and punitive damages of $10,000, together with reasonable attorney fees and costs.

122.   As a result of Bank of America's violations of the ECOA, Rozov has been damaged.

123.   Rozov's damages include emotional distress associated with the adverse action based on inaccurate reasons, loss of credit and the opportunity to benefit from credit, and time spent dealing with Bank of America's ECOA violations.

WHEREFORE, Rozov, prays this Honorable Court to enter the following relief against Bank of America in the form of

a.   actual damages,

b.   $10,000 in statutory penalties and punitive damages pursuant to 15 U.S.C. § 1691e(b);

c.   Reasonable attorney fees and costs pursuant to 15 U.S.C. § 1691e(d);

d.   and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT IV - VIOLATIONS OF 15 U.S.C. §1681s-2(b)
### AGAINST BANK OF AMERICA FOR DISPUTES TO EARLY WARNING

124.   Plaintiffs incorporate by reference their allegations in 1, 3 – 12, 27 – 47, and 40 – 102 as if fully stated herein.

20

125.     Bank of America is a furnisher under the FCRA because it provides information concerning consumers to credit reporting agencies.

126.     Bank of America violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's Dispute when it failed to review all relevant information regarding the alleged fraud forwarded by Early Warning.

127.     Additionally, Bank of America violated §1681s-2(b) by failing to accurately respond to Plaintiffs' disputes forwarded by Early Warning concerning the account Bank of America reported.

128.     As a result of Bank of America's violations of the FCRA, Plaintiffs have suffered damages including but not limited to mental pain and anguish, emotional distress, credit defamation, time spent dealing with credit report disputes, and the costs associated with their respective disputes.

129.     Bank of America's acts and/or omissions were willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

130.     In the alternative, Bank of America negligently violated FCRA entitling Plaintiffs to recover under 15 U.S.C. §1681o.

131.     Plaintiffs are entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiffs pray this Honorable Court to enter the following relief for Plaintiffs and against Bank of America:

a.     Adjudging that Bank of America has violated 15 U.S.C. §1681s-2(b);

b.     Awarding Plaintiffs actual damages;

21

    c.    statutory damages;

    d.    attorneys' fees, litigation expenses and costs;

    e.    and such other relief as the Court deems just and proper.

**COUNT VI – VIOLATIONS OF 15 U.S.C. §1681s-2(b)**
**AGAINST BANK OF AMERICA FOR DISPUTES**
**FORWARDED BY CHEX SYSTEMS**

132.    Plaintiffs incorporate by reference their allegations in 1, 3 – 12, 27 – 47, and 40 - 102 as if fully stated herein.

133.    Bank of America is a furnisher under the FCRA because it provides information concerning consumers to credit reporting agencies.

134.    Bank of America violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiffs' Dispute when it failed to review all relevant information regarding the alleged fraud.

135.    Additionally, Bank of America violated §1681s-2(b) by failing to accurately respond Plaintiffs' disputes forwarded by Chex Systems concerning the account Bank of America reported.

136.    As a result of Bank of America's violations of the FCRA, Plaintiffs have suffered damages including but not limited to mental pain and anguish, emotional distress, credit defamation, time spent dealing with credit report disputes, and the costs associated with their respective disputes.

137.    Bank of America's acts and/or omissions were willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

138.    In the alternative, Bank of America negligently violated FCRA entitling Plaintiffs to recover under 15 U.S.C. §1681o.

139.    Plaintiffs are entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiffs prays this Honorable Court to enter the following relief for Plaintiffs and against Bank of America:

a.    Adjudging that Bank of America has violated 15 U.S.C. §1681s-2(b);

b.    Awarding Plaintiffs actual damages;

c.    statutory damages;

d.    attorneys' fees, litigation expenses and costs;

e.    and such other relief as the Court deems just and proper.

<u>**COUNT VII – VIOLATIONS OF 15 U.S.C. §1681i<br>AGAINST EARLY WARNING SERVICES**</u>

140.    Plaintiffs incorporate by reference their allegations in paragraphs 2 – 4, 6, 14 – 17, 27 – 47, and 50 – 102 as if fully set forth herein.

141.    At all times relevant hereto, Early Warning is and was a "consumer reporting agency" as provided for under the FCRA.

142.    At all times relevant hereto, Plaintiffs were each a "consumer" as provided for under the FCRA.

143.    During the relevant time frame, Early Warning received Plaintiffs' Disputes regarding the accuracy or completeness of the Bank of America account appearing on each of Plaintiffs' consumer disclosures.

144.    Early Warning Services violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiffs' credit files after receiving actual notice of inaccuracies contained therein.

145.     Early Warning unreasonably relied on information provided by Bank of America, when readily verifiable information that Plaintiffs provided in their respective disputes placed Early Warning on notice that Bank of America's information was inaccurate and unreliable.

146.     Early Warning' acts or omissions were willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

147.     Alternatively, Early Warning negligently violated FCRA entitling Plaintiffs to recover under 15 U.S.C. §1681o.

148.     As a result of Early Warning' FCRA violations, Plaintiffs suffered mental and emotional distress associated with inaccurate information in their respective consumer  files, damage to their reputations, checking account denials, mental and emotional distress of being unable to open checking accounts, time spent dealing with consumer  report disputes, and expenses associated with consumer report disputes.

WHEREFORE, Plaintiffs, pray this Honorable Court to enter the following relief against Early Warning in the form of:

a.   Actual damages in an amount to be determined by the jury;

b.   Punitive damages in an amount to be determined by the jury;

c.   Statutory damages as determined by the Court;

d.   Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and

e.   Such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VIII – VIOLATIONS OF 15 U.S.C. §1681e(b)
## AGAINST EARLY WARNING SERVICES

149.     Plaintiffs incorporate by reference their allegations in 2 – 4, 6, 14 – 17, 27 – 47, and 50 – 102 as if fully set forth herein. As if fully set forth herein.

24

150.    At all times relevant hereto, Early Warning is and was a "consumer reporting agency" as provided for under the FCRA.

151.    At all times relevant hereto, Plaintiffs were each a "consumer" as provided for under the FCRA.

152.    Early Warning violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report and files it publishes and maintains concerning the Plaintiffs.

153.    Early Warning's acts and/or omissions were willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

154.    In the alternative, Early Warning negligently violated FCRA entitling Plaintiffs to recover under 15 U.S.C. §1681o.

155.    As a result of Early Warning's failures to comply with the FCRA, Plaintiffs suffered mental and emotional distress associated with inaccurate information in their respective consumer files, damage to their reputations, checking account denials, mental and emotional distress of being unable to open checking accounts, time spent dealing with consumer report disputes, and expenses associated with consumer report disputes.

156.    WHEREFORE, Plaintiffs, prays this Honorable Court to enter the following relief against Early Warning in the form of:

    a.  Actual damages in an amount to be determined by the jury;

    b.  Punitive damages in an amount to be determined by the jury;

    c.  Statutory damages as determined by the Court;

    d.  Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and

e.   Such other and further relief including as the Court deems equitable and just under the circumstances.

**COUNT IX – VIOLATIONS OF 15 U.S.C. §1681i**
**AGAINST CHEX SYSTEMS**

157.   Plaintiffs incorporate by reference their allegations in paragraphs 2 – 4, 6, 14 – 17, 27 – 47, and 50 – 102 as if fully set forth herein.

158.   At all times relevant hereto, Chex Systems is and was a "consumer reporting agency" as provided under the FCRA.

159.   At all times relevant hereto, Plaintiffs were each  a "consumer" as provided for under the FCRA.

160.   During the relevant period, Chex Systems received Plaintiffs' Disputes regarding the completeness of the Bank of America account appearing in Plaintiffs' consumer disclosures.

161.   Chex Systems violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiffs' credit files after receiving actual notice of inaccuracies contained therein.

162.   Additionally, Chex Systems unreasonably relied on information provided by Bank of America, when readily verifiable information that Plaintiffs provided in their respective disputes placed Chex Systems on notice that Bank of America's information was inaccurate and unreliable.

163.   Chex Systems 's acts and/or omissions were willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

164.   In the alternative, Chex Systems negligently violated FCRA entitling Plaintiffs to recover under 15 U.S.C. §1681o.

165.   As a result of Chex Systems failures to comply with the FCRA, Plaintiffs suffered mental and emotional distress associated with inaccurate information in their respective consumer

files, damage to their reputations, checking account denials, mental and emotional distress of being unable to open checking accounts, time spent dealing with consumer report disputes, and expenses associated with consumer report disputes.

166.     WHEREFORE, Plaintiffs pray this Honorable Court to enter the following relief for Plaintiffs and against Chex Systems in the form of:

     a.   Actual damages in an amount to be determined by the jury;

     b.   Punitive damages in an amount to be determined by the jury;

     c.   Statutory damages as determined by the Court;

     d.   Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and

     e.   Such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT X – VIOLATION OF 15 U.S.C. § 1681e(b) AGAINST CHEX SYSTEMS

167.     Plaintiffs incorporates by reference their allegations in paragraphs 2 – 4, 6, 14 – 17, 27 – 47, and 50 – 102 as if fully set forth herein.

168.     At all times relevant hereto, Chex Systems is and was a "consumer reporting agency" as provided under the FCRA.

169.     At all times relevant hereto, Plaintiffs were each a "consumer" as provided for under the FCRA.

170.     Chex Systems violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports and files it publishes and maintains concerning the Plaintiffs.

171.     Any users of consumer reports that viewed the Bank of America account saw each of the Plaintiffs being reported for suspected fraud.

172.    As a result of Chex Systems' failures to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in their respective consumer files, damage to their reputations, checking account denials, mental and emotional distress of being unable to open checking accounts, time spent dealing with consumer report disputes, and expenses associated with consumer report disputes.

173.    WHEREFORE, Plaintiffs pray this Honorable Court to enter the following relief for Plaintiffs and against Chex Systems in the form of:

a. Actual damages in an amount to be determined by the jury;

b. Punitive damages in an amount to be determined by the jury;

c. Statutory damages as determined by the Court;

d. Attorneys' fees, litigation expenses and costs;

e. Interest as permitted by law; and

f. Such other and further relief including as the Court deems equitable and just under the circumstances.

### JURY DEMAND

174.    Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

**SHARMIN & SHARMIN, P.A.**

*/s/ Kevin Rajabalee, Esq.*
Fla. Bar. No. 119948
Eiman Sharmin, Esq.
FBN: 716391
830 North Federal Highway
Lake Worth, FL 33460
Main: 561-655-3925
Direct: 561-296-9109

28

Fax: 844-921-1022
Primary email: kevin@sharminlaw.com
Email: eiman@sharminlaw.com

*Attorneys for Plaintiff*